ADAM PAUL LAXALT
  Nevada Attorney General
D. RANDALL GILMER (Bar No. 14001)
  Chief Deputy Attorney General
State of Nevada
Office of the Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
(702) 486-3427 (phone)
(702) 486-3773 (fax)
drgilmer@ag.nv.gov

*Attorneys for Defendants
Isidro Baca, Scott Kahler, Kathryn Reynolds,
James Stogner and Elizabeth "Lisa" Walsh*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DAVID JONATHAN THOMAS,<br><br>             Plaintiff,<br><br>vs.<br><br>JAMES COX, et al.,<br><br>             Defendants. | Case No.  3:13-cv-00508-RCJ-CBC<br><br>**DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT** |

Defendants, Isidro Baca, Scott Kahler, Kathryn Reynolds, James Stogner, and Elizabeth "Lisa" Walsh (Defendants), by and through counsel, Adam Paul Laxalt, Attorney General of the State of Nevada, and D. Randall Gilmer, Chief Deputy Attorney General, hereby move for summary judgment.  This Motion is brought pursuant to Federal Rule of Civil Procedure 56 on the grounds that there are no genuine disputes as to any material fact and Defendants are entitled to judgment as a matter of law.  This Motion is based on the following Memorandum of Points and Authorities, the attached exhibits, and all papers and pleadings on file in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants are entitled to judgment as a matter of law, because no genuine issues of material fact exist as to Plaintiff David Thomas' (Thomas) claims.  In this case, Thomas

alleges Defendants infringed upon his free exercise clause rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) by denying him a "vegetarian kosher diet" during his prison custody that comported with his specific demands.

The Complaint is substantively deficient for at least three separate and distinct reasons.

First, Thomas' First Amendment rights were not violated. During the time periods alleged, the prison offered Thomas a nutritionally adequate kosher diet, but he refused it due to his personal preferences, and not due to any recognized religious need or belief. To the extent Thomas alleges the prison must provide him a specific vegetarian kosher diet that comports with his demands, the First Amendment and RLUIPA do not allow prisoners to dictate the minute details of their diet, so long as the diet is nutritionally adequate and allows the prisoner to follow verifiable religious dietary strictures.

Second, Defendants Baca, Walsh, Kahler, and Stogner did not personally participate in an alleged constitutional violation. Baca and Walsh cannot be held liable for merely responding to Thomas' grievances, and Baca, Walsh, Kahler, and Stogner, employees of a single facility, do not control the diet menus for the prison; the diet menus are set system-wide pursuant to regulations.

Third, Defendants are entitled to qualified immunity. The elements for qualified immunity are satisfied in this case, because, even assuming Thomas could have set forth a genuine issue of material fact regarding whether his constitutional rights were violated, no objectively reasonable state actor in Defendants' positions were on clear notice that their actions in this case violated Thomas' First Amendment rights.

For these reasons and those argued more fully below, this Court should grant Defendants judgment as a matter of law.

## II. NATURE OF THE CASE/RELEVANT PROCEDURAL HISTORY

This is a *pro se* prisoner civil rights action brought by Thomas (#18724), an inmate incarcerated within the Nevada Department of Corrections (NDOC) and currently housed

at Northern Nevada Correctional Center (NNCC), asserting 42 U.S.C. § 1983 claims. After screening, the Court construed Thomas' allegations as First Amendment free exercise clause and RLUIPA claims pertaining to (1) alleged denial of a "vegetarian kosher" diet since November 2011, (2) alleged denial of a kosher diet during Passover 2012, and (3) supervisory liability as to Baca. *See* ECF No. 3 at 4–5.

On May 20, 2014, the parties participated in an Early Mediation Conference, but a settlement did not result. *See* ECF No. 10. On January 27, 2015, Defendants moved for summary judgment solely on the basis of Thomas' failure to fully and properly exhaust administrative remedies. *See generally* ECF No. 18. On July 27, 2015, after full briefing, the Court granted Defendants summary judgment. *See generally* ECF No. 53. However, Plaintiff appealed, and on January 12, 2017, the mandate issued for the appellate court's reversal solely on the exhaustion issue. *See* ECF No. 72.

On March 24, 2017, the Court held a settlement conference, at which the parties settled. *See* ECF No. 87. However, on December 15, 2017, after protracted disputes between the parties as to the material terms of the settlement agreement, the Court (by and through Magistrate Judge William G. Cobb) ruled that the settlement agreement was void, and returned the case to litigation. *See* ECF No. 120 at 3. On August 6, 2018, the Court issued its scheduling order. *See* ECF No. 123. The parties engaged in discovery.

Defendants now move for summary judgment because no genuine disputes of material fact exist as to the viability of Thomas' claim, or, alternatively, Defendants are entitled to qualified immunity.

**III.   STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Thomas has been continuously incarcerated within the NDOC system since 1983. *See* Exh. A[1] at 1, APP000001. Since March 2011, Thomas has been housed at NNCC. *See id.* at 2, APP000002.

---

[1] Because the beginning of Thomas' incarceration predates modern computerized NDOC records, his computerized housing history report begins in 2002. *See* Exh. A at 1, APP000001. However, his original booking date is noted. *See id.* ("Booking Begin Date: 08/29/1983").

Since at least 2006, Thomas has identified his specific religious affiliation within the NDOC as "messianic Jewish." *See* Exh. B at 1, APP000003 ("MESSIA[N]IC JEWISH . . . FAITH DECLARATION FORM COMPLETED"). However, by February 2012, Thomas had further narrowed his declared religious affiliation[2] to "Yahudim Natzaren," or a "Jahudim Honnatzori Nazir," which Thomas appears to associate with the practices of Karaite Jews, rather than "Rabbinic" Jews. *See* Exh. C at 1–4, APP000004-000007. In doing so, Thomas requested a "vegetarian kosher/Common Fare" diet accommodation. *See id.* at 3, APP000006. Thomas signed the forms acknowledging his acceptance of the Common Fare diet accommodation, but added a handwritten addendum to the forms alleging the Common Fare diet is "illegal," but that he would accept the diet anyway. *See id.* at 10–11, APP000013-000014.

On April 5, 2012, Thomas submitted a prison grievance complaining that he received a Common Fare food tray containing a food item he alleged was "not kosher" for Passover[3] (leavened bread). *See* Exh. D at 38, APP000055 ("Today we started Passover which means that we can[-]not have any leaven or anything with leaven in it on our trays! They handed me a Common Fare tray with bread!"). After resubmitting procedurally improper grievances, on August 8, 2012 Thomas received an informal grievance response indicating that the previous kosher diet had been phased out for inmates without a specific order, and that there was no distinction between the Common Fare diet and Thomas' requests for "Vegetarian Kosher . . . Meatless Common Fare" and other diets. *See id.* at 22, APP000039. On January 1, 2013, Thomas received a response indicating that Thomas had renounced the Common Fare diet on August 8, 2012, and had returned to the standard diet. *See id.* at 9, APP000026. The response further indicated

---

[2] Thomas uses multiple different spellings for his religious affiliation, which makes a direct transcription difficult. *See generally* Exh. B, APP000003.

[3] Thomas' emergency grievance is dated April 5, 2012. *See* Exh. D at 38, APP000055. However, Passover in 2012 did not begin until sunset on April 6, 2012. *See Passover 2012*, CALENDARDATE.COM, https://www.calendardate.com/passover_2012.htm (retrieved December 19, 2018). This Court can take judicial notice of facts not subject to reasonable dispute. *See* FED. R. EVID. 201(b).

that the "culinary manager" in future Passover meals would follow guidelines set forth by the "Rab[b]i." *See id,* APP000026.

Since late 2011 and early 2012, the NDOC phased out the old prison kosher diet menu and implemented the Common Fare religious diet menu. *See generally* Exh. E, APP000056-000077. The Common Fare diet menu had previously been adopted by other jurisdictions, including the Federal Bureau of Prisons (FBOP). *See Resnick v. Adams*, 348 F.3d 763, 765–66 (9th Cir. 2003). The Common Fare menu complies with Kosher Orthodox Union standards and meets minimum daily nutritional requirements for adult men. *See* Exh. E at 2, APP000057; *see also* Exh. F, APP000078-000084.[4] The Common Fare diet menu is substantially similar in nutritional value to the old kosher diet menu. *Cf.* Exhs. G, H, APP000085, APP000086-000089; *cf. also* Exh. I, APP000090-000095. The NDOC recognizes believers in Judaism as eligible for a kosher diet consideration, which Common Fare satisfies. *See* Exh. J at 6, APP000101; *cf.* Exh. E at 2, APP000057; *see also Ackerman v. Dep't of Corr.*, 2:11-cv-00883-GMN-PAL at ECF No. 292-1 (declaration as to the NDOC's Common Fare kosher certification); *see also id.* at ECF No. 47-1 (declaration of a kosher expert as to the NDOC's Common Fare kosher practices).[5]

## IV.  LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). Summary judgment allows courts to avoid unnecessary trials when there is no dispute as to the facts. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468,

---

[4] For the first two years of Common Fare, the dietitian referred to the menu as "Male Kosher Menu." *See* Exh. F at 1–2, APP000078-000079.

[5] "The court may judicially notice a fact that is not subject to reasonable dispute." FED. R. EVID. 201(b). "'Court orders and filing[s] are the type[s] of document[s] that are properly noticed under [Rule 201(b)]'" *Miglin v. Mellon*, 2009 WL 3719457 at *2 (D. Nev. Nov. 4, 2009) (quoting *Neilson v. Union Bank of Cal.*, 290 F.Supp.2d 1101, 1112 (C.D.Cal.2003)).

1472 (9th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The purpose of summary judgment is to isolate and then terminate claims that are factually unsupported. *Id.* at 323–24. A moving party is not required to disprove the non-moving party's claims. *Id.* Instead the moving party is simply required to point out the absence of evidence supporting the non-moving party's claims. *Id.*

Reasonable inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *T.W. Elec. Serv.*, 809 F.2d at 631. The court is concerned with establishing the existence of genuine issues, and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

The facts are only "viewed in the light most favorable to the nonmoving party if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita* 475 U.S. at 586–87) (internal quotation marks omitted). The United States Supreme Court has stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

V.	ARGUMENT

    A.	**Defendants Did Not Violate Thomas' First Amendment Free Exercise Rights by Offering Him the Common Fare Diet Menu Tray**

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Walker v. Beard*, 789 F.3d 1125 (9th Cir. 2015) (upholding prison classifications used to cell inmates with individuals of a different race, where placement allegedly interferes with inmate's religious practice); *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008); *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1993); *Friend v. Kolodzieczak*, 923 F.2d 126, 127 (9th Cir. 1991). In order to implicate the Free Exercise Clause, the prisoner's belief must be both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). A prisoner must demonstrate that defendants have burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (1997), abrogated on other grounds by *Shakur*, 514 F.3d at 884 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

    Prison inmates have a right to food sufficient to sustain them in normal health that satisfies the dietary laws of their religion. *See McElyea*, 833 F.2d at 198. However, inmates bear the burden of showing that prison policies "'constitute a substantial burden on the exercise of [their] religious beliefs[.]'" *See Harry v. Perkins*, 735 Fed. App'x. 296, 297 (9th Cir. 2018). Beliefs that are philosophical or personal, rather than religious, are not protected under First Amendment scrutiny. *See Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972) (internal citations omitted). "[T]he very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in

which society as a whole has important interests." *Id*. "For a practice to be 'rooted in religion' the religious expression must be 'inseparable and interdependent' from the religion in question." *See id*. at 216. Prison officials are not required to recognize the idiosyncrasies every possible religion or faith group, so long as a substantial burden is not imposed. *See England v. Walsh*, 727 Fed. App'x 255, 257 (9th Cir. 2018) (internal citations omitted).

Here, Thomas alleges that he was denied a "vegetarian kosher" diet option and that he was denied a kosher diet during Passover in 2012. *See* ECF No. 3 at 4–5. However, Thomas applied for and received the Common Fare diet menu option, which is a kosher diet. *See generally* Exh. C, APP000004-000017. Thomas acknowledged that he "quit eating meat" before he came to practice his faith, not that it was a requirement for a kosher diet. *See id*. at 5, APP000008 ("Since I have quit eating meat, even before I started my journey, I [indecipherable] to detest the smell of it cooking!"). In response to the faith declaration question "[h]ave you adhered to this particular religious/spiritual belief diet before[,]" Thomas checked the box for "NO[.]" *See id*. Thomas acknowledged that the Common Fare diet complied with kosher diet requirements. *See id*. at 8, APP000011 ("If I am put on the 'Common Fare' diet then I know that I could eat vegetarian kosher because my food would be prepared in [indecipherable] that are made for vegetarian food not meat!"); *see also Resnick*, 348 F.3d at 765–66 (FBOP Common Fare Menu recognized as kosher); *see also Brooks v. Walsh*, 2017 WL 1100900 at *2, 2:14-cv-00497-APG-CWH at ECF No. 70 (D. Nev. March 20, 2017) (discussing the NDOC's implementation of the kosher/Common Fare menu). Thomas' demand for a "vegetarian kosher" diet is rooted in his personal, philosophical choices, not in the practice of recognized kosher rules. *See Yoder*, 406 U.S. at 215–16.

As to Thomas' allegations of being denied a kosher diet during Passover 2012: Thomas rejected the entire Common Fare meal tray in the days leading up to Passover 2012 because the tray allegedly had bread on it. *See* Exh. D at 34–38, APP000051-000055. Thomas offered no evidence that the bread allegedly placed on the Common Fare

tray contaminated or otherwise rendered the other food items on the tray inedible. *See generally* Exh. D, APP000018-000055. Because the Common Fare meal trays are kosher, Thomas rejected them based on his personal, philosophical choices, not based on recognized kosher rules. *See Yoder*, 406 U.S. at 215–16. Furthermore, Thomas willingly accepted the Common Fare diet menu in February 2012, and willingly renounced it in favor of the standard menu in August 2012. *See generally* Exh. C, APP000004-000017; *see also* Exh. D at 9, APP000026.

Because Thomas' demands for dietary accommodations arise from his personal, philosophical choices, and not from recognized kosher dietary rules, his First Amendment free exercise claims fail as a matter of law, and this Court should grant Defendants summary judgment.

**B. Defendants Did Not Violate RLUIPA by Offering Thomas the Common Fare Diet Menu Tray**

As opposed to traditional First Amendment jurisprudence, where prisoners' free exercise claims are analyzed under the deferential rational basis standard of *Turner v. Safley*, 482 U.S. 78 (1987), "RLUIPA requires the government to meet the much stricter burden of showing that the burden it imposes on religious exercise is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest." *Greene v. Solano Cty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (citation and internal quotation marks omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1156-57 (9th Cir. 2008).

RLUIPA requires an inmate to establish three predicate elements to demonstrate a prima facie case: (1) belief in a religion that is being substantially burdened; (2) federal involvement (*e.g.* receipt of federal funds by the NDOC); and (3) exhaustion by the inmate. *See Warsoldier v. Woodford,* 418 F.3d 989, 994 (9th Cir. 2005). The Ninth Circuit has set out four factors for the RLUIPA analysis: (1) what "exercise of religion" is at issue; (2) what "burden," if any, is imposed on that exercise of religion; (3) if there is a burden, whether it is "substantial;" and (4) if there is a "substantial burden," whether it is

justified by a compelling governmental interest and is the least restrictive means of furthering that compelling interest. *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2007), aff'd en banc, 535 F.3d 1058, 1068 (9th Cir. 2008). However, only injunctive relief is available for RLUIPA claims. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (RLUIPA does not contemplate liability of government employees in individual capacity).

Here, Thomas' allegations regarding the NDOC failing to provide him a "vegetarian kosher" diet do not constitute an exercise of religion or a substantial burden on the practice of religion, because Thomas' demands for a "vegetarian kosher" diet are personal and philosophical in nature, and do not implicate kosher diet rules. *See* Exh. C at 5, APP000008 ("Since I have quit eating meat, even before I started my journey, I [indecipherable] to detest the smell of it cooking!"); *see also Yoder*, 406 U.S. at 215–16. As to Thomas allegations of being served bread during Passover 2012: Thomas voluntarily renounced the Common Fare diet menu after the holiday, rendering his claims for injunctive relief moot. *See* Exh. D at 9, APP000026.

Because Thomas' allegations against the Common Fare menu arise out of a non-religious justification, and because the Common Fare menu does not impose a substantial burden on the practice of religion, his RLUIPA claims fail as a matter of law, and this Court should grant Defendants summary judgment.

**C. Defendants Baca, Walsh, Kahler, and Stogner Did Not Personally Participate in a Constitutional Violation by Responding to Thomas' Grievances, and Did Not Have the Authority to Change the Diet Menu**

42 U.S.C. § 1983 creates a cause of action against a person who, acting under the color of state law, "subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights" guaranteed under the constitution. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *May v. Enomoto*, 633 F.3d 164, 167 (9th Cir. 1980); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Jones v. Williams*, 297 F.3d 930, 934

(9th Cir. 2002); *James v. Rowlands*, 606 F.3d 646, 653 n. 3 (9th Cir. 2010). Vague and conclusory allegations concerning the involvement of official personnel in a civil rights violation are not sufficient to establish personal participation. *See Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir. 1982).

Here, Thomas alleges that Defendants Baca and Walsh denied him a "vegetarian kosher diet" or a kosher diet during Passover 2012, and that Baca is liable as a supervisor. *See* ECF No. 3 at 4–5. However, Baca and Walsh merely denied Thomas' grievance regarding his diet complaints. *See* Exh. D at 1, 9, APP000018, APP000026. An allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). Furthermore, multiple authorities hold that merely denying inmate grievances is insufficient to establish the personal participation of a defendant in a constitutional violation as a matter of law. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam)). By analogy, in the federal courts, a prisoner cannot bring an action on a *Bivens* claim against a Federal Bureau of Prisons grievance responder simply because he or she denied an inmate's grievance. *Ostrovski v. Broussard*, No. C13-5421 BHS, 2013 WL 5720136, at *2 (W.D. Wash. Oct. 21, 2013) (citing *Abdallah v. Cohen*, 481 F. App'x. 409, 410, 2012 WL 4358183 (9th Cir. 2012) (holding that denial of a prisoner's administrative grievance does not constitute the required personal participation under a *Bivens* theory).

Furthermore, Baca, the Warden of NNCC, Walsh, the Associate Warden of NNCC, Kahler, a culinary manager at NNCC, and Stogner, the Chaplain at NNCC, had no authority or power to alter the prison diet menus, because the menus are set system-wide by NDOC regulation. *See* Exh. E at 2, APP000057 ("The Common Fare Menu may not be changed at facility level, except where seasonal availability of produce items warrants that substitutions be made."). Under AR 814, the facility-level employees could not modify the Common Fare diet to comport with Thomas' demands for modifications. *See*

*id*. Because Thomas' allegations go beyond the scope of the Defendants' power pursuant to their employment, they could not have personally participated in an alleged constitutional violation. *See May*, 633 F.3d at 167 (requiring an affirmative link between the conduct of a defendant to an alleged violation).

Because Defendants did not personally participate in a constitutional violation by responding to Thomas' grievances, and because Defendants had no power to alter the Common Fare diet menu, this Court should grant Defendants summary judgment.

**D.    Alternatively, Defendants Are Entitled to Qualified Immunity**

In 42 U.S.C. § 1983 actions, qualified immunity protects state officials from civil liability for damages resulting from discretionary acts, as long as those acts do not violate clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). Qualified immunity is not just a defense to liability, but it is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Originally, courts were constrained to follow the formula outlined by the United States Supreme Court in *Saucier v. Katz*, which required that: (1) the court must first determine whether the facts as pled point to a constitutional violation, and (2) if so, then the court must decide whether the constitutional right was clearly established at the time of the alleged violation. 533 U.S. 194, 201 (2001). The inquiry ended if the first prong was not met. *Id*. However, the United States Supreme Court has since instructed lower courts that they may follow the *Saucier* formula, or they can elect to take the two parts out of order and examine the knowledge component first, ending the inquiry if the Defendant would not have had notice of a constitutional violation. *Pearson v. Callahan*, 555 U.S. 233, 240–42 (2009).

Under a qualified immunity analysis, clearly established law "should not be defined 'at a high level of generality.'" *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal citation omitted); *see also S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017) (quoting *White*, 137 S. Ct. at 551). "[T]he clearly established law must be

'particularized' to the facts of the case." *Id.* A plaintiff cannot deprive defendants of entitlement to qualified immunity by alleging violations of extremely abstract rights. *See id.* A defendant is not required to foresee judicial decisions that do not yet exist, where the requirements of law are far from obvious. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018) (internal citations omitted).

Here, no constitutional violation was committed with respect to Thomas' First Amendment free exercise claims, because Defendants offered Thomas a kosher diet menu accommodation (Common Fare), and Thomas voluntarily renounced his diet accommodation and returned to the standard menu. *See generally* Exh. C, APP000004-000017; *see also* Exh. D at 9, APP000026. However, even assuming a constitution violation occurred, it is not clearly established that offering a prison inmate a kosher diet accommodation that is recognized as kosher but not "vegetarian" under the inmate's personal or philosophical beliefs would violate that inmate's First Amendment rights. *See Yoder*, 406 U.S. at 215–16; *see also Resnick*, 348 F.3d at 765–66 (recognizing the FBOP Common Fare diet as a kosher diet). Given the particularized facts and circumstances of this case, it was not clearly established that any action or policy choice by the Defendants was unconstitutional. *See White*, 137 S. Ct. at 551. It is not clearly established that providing a prison inmate a kosher diet accommodation, but failing to modify the diet to comport with the inmate's additional, personal demands for vegetarianism, or any other non-kosher dietary demand, would violate the First Amendment. *See id.*; *see also England*, 727 Fed. App'x at 257.

Because no constitutional violation occurred, and because it is not clearly established that Defendants acted unconstitutionally as to Thomas, this Court should grant them qualified immunity.

## VI.   CONCLUSION

Thomas alleges the NDOC denied him a diet comporting with his religious beliefs. However, Thomas' own faith group affiliation forms reveal that his demands for a "vegetarian kosher" diet arise from his own personal or philosophical choices, and that he

began pursuing vegetarianism prior to and separate from his faith group affiliation. Thomas acknowledged the Common Fare diet was kosher and accepted it. Paradoxically, Thomas later abandoned the Common Fare diet, a certified kosher diet, of his own volition to return to the non-kosher standard menu. Thomas' erratic behavior regarding his dietary choices demonstrates that the Common Fare menu did not impose a substantial burden on his religious practices under the First Amendment free exercise clause or RLUIPA. Furthermore, Defendants Baca, Walsh, Kahler and Stogner did not personally participate in a constitutional violation, because they did not have the power under NDOC regulations to alter the diet to comport with Thomas' demands.

Defendants are also entitled to qualified immunity, because no constitutional violation occurred, and Defendants or any reasonable state actor could not have had notice that any of their actions were violations of clearly established law. For these reasons, Defendants respectfully request that this Court grant their Renewed Motion for Summary Judgment in its entirety and enter judgment in their favor as a matter of law.

DATED this 27th day of December, 2018.

ADAM PAUL LAXALT
Attorney General

By: /s/ *D. Randall Gilmer*
D. Randall Gilmer (Bar No. 14001)
Chief Deputy Attorney General
*Attorneys for Defendants*

VII. **EXHIBIT LIST**

1. Exhibit A - Thomas Bed History Report
2. Exhibit B - Thomas Case Notes Circa 2006
3. Exhibit C - Thomas Religious Diet and Faith Declaration Form 2012
4. Exhibit D - Grievance Log # 2006-29-42178
5. Exhibit E - AR 814 effective date February 21, 2012
6. Exhibit F - Common Fare/Kosher Nutritional Statements
7. Exhibit G - Common Fare Menu Example
8. Exhibit H - Old Kosher Diet Menu Example
9. Exhibit I - Common Fare/Kosher Nutritional Synopses
10. Exhibit J - AR 810.2 effective date August 1, 2011
11. Exhibit K - Declaration of Kaye Park

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the State of Nevada, Office of the Attorney General, and that on December 27, 2018, I electronically filed the foregoing **DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**, via this Court's electronic filing system. Parties that are registered with this Court's electronic filing system will be served electronically. For those parties not registered, service was made by depositing a copy for mailing in the United States Mail, first-class postage prepaid, at Las Vegas, Nevada to the following:

David Jonathan Thomas, #18724
Northern Nevada Correctional Center
P O Box 7000
Carson City, NV 89702

/s/ *Barbara Fell*
Barbara Fell, an employee of the
Office of the Attorney General