# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DAVID JONATHAN THOMAS,

Plaintiff,

v.

JAMES COX, et. al.,

Defendant.

3:13-cv-00508-RCJ-CBC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE[1]**

This case involves a civil rights action filed by Plaintiff David Jonathon Thomas ("Plaintiff") against Defendants Isidro Baca, Kathryn Reynolds, James Stogner, and Elizabeth "Lisa" Walsh (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment (ECF No. 137).  Plaintiff opposed the motion, (ECF 144), and Defendants replied (ECF No. 145).  Having thoroughly reviewed the record and papers, the Court hereby recommends that Defendants' motion for summary judgment be granted, in part and denied, in part.

I.    **BACKGROUND**

A.    Procedural History

Plaintiff is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently incarcerated at the Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada.  Proceeding *pro se*, Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against NDOC Director James Cox, NNCC Warden Isidro Baca, NNCC Assistant Warden Elizabeth Walsh, NNCC Chaplain James Stogner, NNCC ASO Katheryn Reynolds, and NNCC Food Services Manager Scott Kahler. (ECF No.

---

[1]    This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

4.)  Plaintiff's claims primarily arise out of assertions that Defendants failed to provide Plaintiff with vegetarian kosher meals between 2011 and 2013. (*See* ECF No. 4.) Plaintiff seeks declaratory relief, compensatory and punitive damages. (*Id.*)

Pursuant to 28 U.S.C. § 1915A(a), the Court screened Plaintiff's complaint on April 3, 2014.  (ECF No. 3.)  The court determined Plaintiff could proceed with the following claims:  (1) Count I – a First Amendment free exercise claim and a claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") against Defendants Walsh and Kahler based on his allegations that they denied him the ability to obtain vegetarian kosher meals; (2) Count II – a First Amendment free exercise and RLUIPA claims against Defendants Baca, Walsh, Stogner, and Kahler based on the allegation that Plaintiff was not given proper kosher meals during Passover; and, (3) Count III - a supervisory liability claim against Defendant Baca based on the allegation that he failed to adequately train or supervise Defendant Reynolds because he permitted Reynolds to respond to a request that an exception to the rule or policy that caused Plaintiff to be denied a meat-free kosher diet. (ECF No. 3.)[2]

In 2015, Defendants filed a motion for summary judgment arguing the case should be dismissed due to Plaintiff's failure to exhaust his administrative remedies. (ECF No. 18). The court granted Defendants' motion and dismissed the case. (ECF No. 53, 54). Plaintiff appealed the dismissal and the Ninth Circuit reversed the court's order and remanded the case for further proceedings. (ECF No. 66, 70).

B.    Factual Background

Prior to 2012, NDOC offered a "kosher" diet menu to those inmates who identified as members of the Jewish faith. (ECF No. 138, Ex. J.) The kosher diet menu included kosher meat products and was not vegetarian. (ECF No. 138, Ex. H) (example of kosher diet menu in February 2011 which includes meat items such as salisbury steak, kosher

---

[2]    In the complaint, Plaintiff also sued Defendant Cox. (ECF No. 3). However, all claims against Defendant Cox were dismissed in the court's screening order. (ECF No. 3).

turkey, chicken wings, tuna, and spaghetti with meatballs). In February 2012, NDOC discontinued the kosher diet menu and replaced it with the "common fare" menu. (ECF No. 138, Ex. E.) The common fare menu complies with the faith requirements of several religious groups, including the Jewish faith. It is undisputed that the common fare menu, like to prior kosher diet menu, includes meat items and is not vegetarian. (*See* ECF No. 138, Ex. G) (sample common fare menu).

Plaintiff has been housed at NNCC since approximately March 2011. (ECF No. 138, Ex. A). According to NDOC records, Plaintiff identified his religious affiliation as "Messianic Jewish" by at least 2006. (*Id.* at Ex. B). Thereafter, in February 2012, Plaintiff refined his religious affiliation, declaring to be a member of the "Yahudim Natzaren" or "Jahudim Honnatzori Nazir" faiths, which appear to be associated with the practices of the Karaite Jewish faith. (*Id.* at Ex. C, p. APP 4). At this time, Plaintiff requested a religious accommodation for a "vegetarian kosher/common fare" diet based on his faith. (*Id.* at p. APP 6). Plaintiff was approved for the common fare diet menu and began receiving this diet in February 2012. Although the common fare diet provided to Plaintiff was kosher, it was not vegetarian. Thereafter, Plaintiff continued to request a "vegetarian kosher" diet, but he was refused. Ultimately, on August 8, 2012, Plaintiff renounced the common fare menu and returned to a standard diet.

In addition to not receiving a "vegetarian kosher" diet, Plaintiff also asserts he was not provided a proper "kosher" food tray during Passover in 2012. Specifically, on April 5, 2012, which Plaintiff claims was the first day of Passover, he received a common fare food tray that included leaven bread. Bread containing leaven is prohibited during Passover by members of the Jewish faith.

C.    Motion for Summary Judgment

On December 27, 2018, Defendants filed a second motion for summary judgment arguing Plaintiff's claims should be dismissed based on three grounds. (ECF No. 137). First, Defendants assert Plaintiff's First Amendment Free Exercise and RLUIPA claims

should be dismissed because his desire for a vegetarian kosher diet is based on his personal preference – not a sincerely held religious belief. (*Id.* at 7-10). Next, to the extent Plaintiff's claims are asserted against Defendants Baca, Walsh, Kohler, and Stogner, Defendants argue these claims should be dismissed because the defendants did not personally participate in the actions taken in the case and they have no authority to change the NDOC policy related to kosher meals. (*Id.* at 10-12). Finally, in the alternative, Defendants assert that all Defendants are entitled to qualified immunity for any and all actions taken in this case. (*Id.* at 12-13).

Plaintiff opposed asserting that his request for a "vegetarian kosher" diet is based on his sincerely held religious beliefs; Defendants personally participated in refusing his repeated requests for a vegetarian kosher diet; and, qualified immunity does not apply. (ECF No. 144 at 3, 10-11).

Defendants replied restating their initial arguments and asserting that Plaintiff failed to come forward with admissible evidence to create any issues of material fact. (ECF No. 145 at 3-4).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not

1   defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec.*

2   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

3          For purposes of opposing summary judgment, the contentions offered by a *pro se*

4   litigant in motions and pleadings are admissible to the extent the contents are based on

5   personal knowledge and set forth facts that would be admissible into evidence and the

6   litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas,*

7   393 F.3d 918, 923 (9th Cir. 2004).

8   **III.   DISCUSSION**

9          A.   <u>First Amendment Free Exercise and RLUIPA Claims</u>

10         Counts I and II are predicated on Plaintiff's claims that his rights under the First

11  Amendment Free Exercise Clause and RLUIPA were violated. In Count I, Plaintiff asserts

12  he was denied a "vegetarian" kosher diet between 2011 and 2013. In Count II, Plaintiff

13  asserts his rights were violated because he was provided a non-Kosher meal during

14  Passover 2012 when he was provided a meal tray containing leaven bread. The court will

15  analyze these claims in turn.

16                1.   Legal Standard - First Amendment Free Exercise Clause

17         "The First Amendment, applicable to state action by incorporation through the

18  Fourteenth Amendment ... prohibits government from making a law prohibiting the free

19  exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th

20  Cir. 2013) (citations and quotation marks omitted, alteration original). "The right to exercise

21  religious practices and beliefs does not terminate at the prison door. The free exercise right,

22  however, is necessarily limited by the fact of incarceration, and may be curtailed in order to

23  achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt,*

24  833 F.2d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone v. Estate of Shabazz,* 482

25  U.S. 342, 348 (1987); *Cruz v. Beto,* 405 U.S. 319, 322 (1972); *Hartmann,* 707 F.3d at 1122;

26  *Shakur v. Schriro,* 514 F.3d 878, 883–84 (9th Cir. 2008).

27

To merit protection under the Free Exercise Clause, a prisoner's religious claim must satisfy two basic criteria. *Callahan v. Woods,* 658 F.2d 679, 683 (9th Cir.1981). First, the prisoner's proffered belief must be "sincerely held." *Id.* Second, the claim must be "rooted in religious belief"—not in "purely secular" philosophical concerns. *Id; see Shakur v. Schriro,* 514 F.3d 878, 885 (9th Cir.2008) (sincerity test set forth in *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir.1994), and *Callahan,* 658 F.2d at 683, determines the applicability of the Free Exercise Clause). In *Shakur,* the Ninth Circuit made clear " '[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'" 514 F.3d at 884 (quoting *Hernandez v. C.I.R.,* 490 U.S. 680, 699 (1989)). Instead, the inquiry is "whether the [prisoner's] beliefs ... are sincerely held and whether they are, in this own scheme of things, religious." *United States v. Seeger,* 380 U.S. 163, 185 (1965); *Shakur,* 514 F.3d at 885 (inquiry is whether plaintiff sincerely believes eating kosher meat is consistent with his faith). Determining if a prisoner's claim is "rooted in religious belief" requires analyzing whether the prisoner's claim is related to his sincerely held religious belief. *Malik,* 16 F.3d at 333 (citation omitted).

In analyzing the legitimacy of a regulation related to a prisoners' religious expression, the court is instructed to utilize the factors set forth in *Turner v. Safley,* 482 U.S. 78 (1987). *See O'Lone,* 482 U.S. at 349; *Shakur,* 514 F.3d at 884. The *Turner* factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner,* 482 U.S. at 89–91.

///

///

///

1

2      2.      Legal Standard – RLUIPA

3      Section 3 of RLUIPA provides:

4          No government shall impose a substantial burden on the religious exercise
           of a person residing in or confined to an institution ... even if the burden
5          results from a rule of general applicability, unless the government
           demonstrates that imposition of the burden on that person—(1) is in
6          furtherance of a compelling governmental interest; and (2) is the least
           restrictive means of furthering that compelling governmental interest.

7  42 U.S.C. § 2000cc–1(a). "Under RLUIPA, [the plaintiff] bear[s] the initial burden of

8  persuasion on whether [a] [p]olicy 'substantially burdens' [his or her] 'exercise of religion.'"

9  *Hartmann,* 707 F.3d at 1124 (citing 42 U.S.C. § 2000cc–2(b)). Thus, the court must begin

10 by "identifying the 'religious exercise' allegedly impinged upon.'" *Greene,* 513 F.3d at 987.

11 "Religious exercise" is "any exercise of religion, whether or not compelled by, or central to,

12 a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A); *Shakur v. Schriro,* 514 F.3d 878,

13 888 (9th Cir. 2008). Thus, RLUIPA "bars inquiry into whether a particular belief or practice

14 is 'central' to a prisoner's religion." *Greene,* 513 F.3d at 987 (quoting *Cutter,* 544 U.S. at 725

15 n.13; 42 U.S.C. § 2000cc–5(7)(A)). However, the Supreme Court has made clear that a

16 prisoner's request for an accommodation must be sincerely based on a religious belief and

17 not some other motivation. *Holt v. Hobbs,* 135 S.Ct. 853, 862, 190 L. Ed. 2d 747 (2015).

18     Next, the court must address "whether the prison regulation at issue 'substantially

19 burdens' that religious exercise." *Greene,* 513 F.3d at 987. A "substantial burden" on

20 "religious exercise" "must impose a significantly great restriction or onus upon such

21 exercise." *Id.* (quoting *San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024, 1034

22 (9th Cir.2004)). "In the context of a prisoner's constitutional challenge to institutional

23 policies, [the Ninth Circuit] has held that a substantial burden occurs 'where the state ...

24 denies [an important benefit] because of conduct mandated by religious belief, thereby

25 putting substantial pressure on the adherent to modify his behavior and to violate his

26 beliefs." *Hartmann,* 707 F.3d at 1125 (quoting *Warsoldier v. Woodford,* 418 F.3d 989, 995

27

(9th Cir .2005)) (internal quotation marks omitted). However, a prison is not required "to pay for an inmate's devotional accessories." *Cutter,* 544 U.S. at 720, n. 8 (citation omitted).

If the plaintiff makes a showing of a substantial burden on the exercise of his religion, the court's analysis then turns to whether the defendant has established that the burden furthers "a compelling governmental interest," and does so "by the least restrictive means." 42 U.S.C. § 2000cc-I(a), (b); *Greene,* 513 F.3d at 988. Prison safety and security have been found to constitute "compelling governmental interest[s]." *Cutter,* 544 U.S. at 725 n.13; *Greene,* 513 F.3d at 988.

While prison administrators are "accorded deference with regard to prison security," they must establish they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Greene,* 513 F.3d at 989 (quoting *Warsoldier,* 418 F.3d at 999) (internal quotation marks omitted). "[I]n light of RLUIPA, no longer can prison officials justify restrictions on religious exercise by simply citing the need to maintain order and security in a prison. RLUIPA requires more." *Id.* at 989–90.

### 3.    Count I - Vegetarian Kosher Diet

Defendants argue Plaintiff's requests for a "vegetarian" kosher diet are solely based on his personal preference to maintain a vegetarian diet – not a sincerely held religious belief. Defendants argument is based on Plaintiff's alleged acknowledgment that he was a vegetarian prior to converting to Judaism. Plaintiff, however, asserts even if he was a vegetarian prior to his conversion, this does not mean he does not sincerely believe that eating a vegetarian kosher diet is a necessary and important aspect of his religion – which he claims he does.

Under both the Free Exercise Clause and RLUIPA, Plaintiff must initially show that the religious practice at issue – i.e., consuming a vegetarian kosher diet – satisfies two criteria: (1) the proffered belief must be sincerely held; and, (2) the claim must be rooted in religious belief and not purely a secular philosophical concern. *Dean v. Corrections Corp. of Am.,* 108 F.Supp.3d 702, 711 (D. Ariz. 2014). A sincerely held religious belief is not

1   limited to the specific tenets of the religious faith at issue. *Shakur*, 514 F.3d at 884-885.

2   Rather, the inquiry focuses on whether Plaintiff sincerely believes such a diet is required

3   by his religion. *Id.*

4         While it is true a prison is permitted to inquire into an inmate's sincerity when

5   considering a religious accommodation, the weight of recent case law suggests it is

6   inappropriate for a court to grant summary judgment based on a Plaintiff's alleged lack of

7   sincerity. *See, e.g., Dean*, 108 F.Supp.3d at 711 (D. Ariz. 2014) (finding that the defendants

8   have raised material questions of fact regarding the Plaintiff's sincerely held beliefs.); *Colvin*

9   *v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (sincerity of an inmate's beliefs does not turn

10  on an inmate's objective knowledge of his religion); *Johnson v. Nev. Bd. of Prison Comm'rs*,

11  No. 3:11-cv-00487-HDM-VPC, 2013 WL 5428423, at *2-3 (D. Nev. Sept. 26, 2013)

12  (although the defendants produced evidence that the Plaintiff's beliefs were not sincerely

13  held, the question "must ultimately be resolved by the trier of fact."); *White*, 2013 WL

14  4496364, at *5 (" 'backsliding' or non-observance of a religious practice is not sufficient to

15  establish as a matter of law that [the plaintiff] is insincere in his religious beliefs."); *Monts v.*

16  *Arpaio*, No. CV 10-0532-PHX-FJM (ECV), 2012 WL 160246, at *3 (D. Ariz. Jan. 19, 2012)

17  (although the plaintiff presented a "weak" case for the sincerity of his religious belief, it still

18  presented a question of fact); *Reiss v. Stansel*, No. CV 09-1760-PHX-RCB (ECV), 2011

19  WL 2111999, at *5-6 (D. Ariz. May 26, 2011) ("[c]redibility issues such as the sincerity of [a

20  plaintiff's] religious belief are quintessential fact questions. As such they ordinarily should

21  be reserved for the factfinder at trial, not for the court at summary judgment,") (internal

22  quotation marks and citation omitted); *Shilling*, 2007 WL 2790623, at *16 ("Whether a belief

23  is sincerely held is a question of fact, generally not appropriately decided in a motion for

24  summary judgment."); *Monson v. Steward*, No. 2:15-CV-00513-PK, 2017 WL 2882709, at

25  *9 (D. Or. July 6, 2017) (same).

26        While the court agrees there is some evidence in the record that suggests Plaintiff's

27  request for a "vegetarian" kosher diet is rooted in his personal preference, the court

disagrees this issue can be resolved as a matter of law. Throughout this case, Plaintiff has repeatedly asserted his request for a "vegetarian" kosher diet is based on his sincerely held religious beliefs. (*See* ECF No. 4 at 3, 4) (references in FAC to "sincerely held" belief in vegetarian kosher diet). In addition, in support of his opposition to the motion for summary judgment, Plaintiff provided various exhibits and handwritten scripture citations from a variety of alleged religious texts he claims support his religious belief.[3]  (*See e.g.,* ECF No. 144-1, Ex. 9) (various handwritten scriptures identified by Plaintiff); (*See* ECF No. 144-2, Ex. 14-2-b) (Affidavit of Thomas dated Feb. 22, 2015 re: sincere belief in scriptures); (ECF No. 144-3, Ex. 21) (Judaism/Kosher Diet Laws); (ECF No. 144-3, Ex. 22) ("How to Keep Kosher"); (ECF No. 144-3, Ex. 24) (Excerpts from Torah). Based on the record, the court cannot conclude as a matter of law that Plaintiff's request for a "vegetarian" kosher diet was exclusively rooted in his personal preference – even if he maintained a vegetarian diet prior to his conversion to Judaism.

Based on the record in this case and the case authority noted above, the court finds there are material issues of fact that should be resolved by the fact finder as to whether Plaintiff's requests for a "vegetarian" kosher meals is based on sincerely held religious beliefs and whether those beliefs are properly rooted in his faith. Therefore, the court finds summary judgment should be denied as to Count I.[4]

### 4.    Count II – Improper Kosher Meal During Passover

Next, Defendants argue Plaintiff's second claim pursuant to the First Amendment Free Exercise Clause and RLUIPA should be dismissed because Defendant did not receive

---

[3]    Although it is unclear whether the items are admissible, Plaintiff's extensive citation to, and apparent reliance on these various exhibits and scriptures, seem to underscore Plaintiff's claims that his beliefs are sincerely held and provide a reference to his interpretation of the requirements of his faith.

[4]    The court notes Defendants have neither analyzed nor provided any argument or admissible evidence related to applicability of the *Turner* factors. Therefore, the court's summary judgment analysis is limited to this specific issue raised by Defendant's motion for summary judgment.

an improper kosher meal during Passover 2012. Defendants argue the date Plaintiff claims he received an improper kosher meal during Passover 2012 did not actually fall within Passover. Moreover, even if he did receive one improper meal, this was not a substantial burden on the free exercise of his religion.

Plaintiff's opposition does not contest the date he received the alleged improper meal containing leaven bread nor does he submit any admissible evidence to contest the date at issue in the FAC or as stated by Defendants' motion for summary judgment. The FAC lists "April 5, 2012" as the operative date in which the events supporting Count II occurred. (ECF No. 4 at 1). The FAC also specifically references Grievance Number 20062942178, wherein Plaintiff states, "on 4/05/2012" he received a meal tray in the dining room that contained "bread" which occurred during Passover. (ECF No. 138 at 37) (emphasis added). Based on these facts, the FAC alleged Plaintiff's rights under the First Amendment and RLUIPA were violated because he received meals "contaminated with leven (sic) i.e., bread products and other prohibited foods" during Passover. (ECF 4 at 6). There are no other claims in the FAC or the record that the court could locate in which Plaintiff asserts he received leaven bread or any other improper kosher meal during Passover 2012.

Pursuant to the Federal Rules of Evidence, the court may take judicial notice of a fact that is not subject to reasonable dispute if the fact is either: (1) generally known within the court's territorial jurisdiction; or, (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201. Courts routinely take judicial notice of the dates in which certain holidays fall upon during a given calendar year. *See e.g., Courthouse News Service v. Yamasaki*, Case No. SACV 17-00126-AG, 2018 WL 3862905 at *1 (C.D.Ca. Aug. 13, 2018) (taking judicial notice of court holidays during 2017 and 2018); *Williams v. Weaver*, Case No. 9:03-cv-0912-LEK-GHL, 2006 WL 2794417 at *5 (N.D.N.Y. Sep. 26, 2006) (taking judicial notice of specific Islamic holidays in 2003); *Ford v. McGinnis*, 352 F.2d 582, 584-585 & n. 4 (2d Cir. 2003)

1  (recognizing Islam's "two major religious observances" as the "Eid ul Fitr feast," which

2  occurs after the conclusion of the holy month of Ramadan, and the "Eid ᴜl Adha" feast);

3  *Commadari v. Long Island Univ.*, 89 F.Supp.2d 353, 379 (E.D.N.Y.2000) (taking judicial

4  notice of the date of the Thanksgiving holiday in 1998); *Platts v. United States*, 658 F.Supp.

5  850, 854, n. 5 (D. Maine 1987) (taking judicial notice of the date of the Labor Day holiday

6  in 1984); *Allen v. Allen*, 518 F. Supp. 1234, 1235, n. 2 (E.D.Pa.1981) (taking judicial notice

7  of the date of Father's Day in 1979); *Lloyd v. Cessna Aircraft Co.*, 430 F.Supp. 25, 26

8  (D.Tenn.1976) (taking judicial notice of the date of the Memorial Day holiday in 1976).

9      As such, the court takes judicial notice of the fact that Passover 2012 began at

10  sunset on *Friday, April 6, 2012* and continued through Friday, April 13, 2012. See

11  https://www.calendardate.com/passover_2012.htm,    last    visited    4/30/2019;

12  http://www.when-is.com/passover-2012.asp, last visited 4/30/2019; see also Fed. R.

13  Evid. 201(b) & (c) (emphasis added). The court further takes judicial notice of the fact that

14  April 5, 2012 did not fall within Passover. *Id*.

15      Based on the undisputed and judicially noticed facts, Plaintiff did not receive an

16  improper kosher meal tray during Passover 2012. Therefore, as a matter oᶠ law, Plaintiff's

17  rights under the First Amendment Free Exercise Clause and RLUIPA were not violated

18  when he received a meal on April 5, 2012 which contained leaven bread. Consequently,

19  Defendants' motion for summary judgment as to Count II should be grantec.

20      However, even if April 5, 2012 did fall within Passover, Defendants are still entitled

21  to summary judgment as to Count II. The evidence is also undisputed that Flaintiff's claims

22  of improperly receiving leaven bread during Passover is limited to one meal. In order to

23  establish a claim under either the Free Exercise Clause or RLUIPA, the plaintiff must show

24  that the defendants "substantially burdened" the practice of his or her religion. *Shakur*, 514

25  F.3d at 883-84 (Free Exercise claim requires proof of a substantial burden); 42 U.S.C. §

26  2000cc–1(a) (RLUIPA requires proof of "substantial burden). It is well settled law in the

27  Ninth Circuit that intrusions which are "relatively short-term and sporadic" do not constitute

a substantial burden of an inmate's free exercise of their religion. *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998); *see also Howard v. Skolnik*, Case No. 09-15382, 2010 WL 1253458 at *1 (9th Cir. March 30, 2010) (unpublished memorandum disposition) (affirming summary judgment on "First Amendment claim concerning two alleged incidents where prison personnel interfered with prisoner's fasting because there was no genuine issue as to whether a substantial burden was placed on Howard's free exercise of religion"); *Smith v. Cruzen*, No. 14-CV-04791 LHK (PR), 2017 WL 4865565, at *4 (N.D. Cal. Oct. 26, 2017), *aff'd*, 735 F. App'x 434 (9th Cir. 2018) (granting summary judgment because one missed prayer did not amount to substantial burden on plaintiff's right to free exercise of religion).

Plaintiff asserts he received one improper kosher meal during Passover. Even if this is true, this single incident of receiving an improper Kosher meal is a short-term and sporadic intrusion into Plaintiff's religious practice and does not constitute a substantial burden on Plaintiff's rights. Thus, the court finds that summary judgment should be granted as to Count II on this additional basis.

B.    <u>Personal Participation</u>

Defendants also assert summary judgment should be granted as to Defendants Baca, Walsh, Kahler, and Stogner because they did not personally participate in any alleged constitutional violations in this case. (ECF No. 137 at 10-12). Defendants assert the only involvement in this case by Defendants Baca, Walsh, Kahler, and Stogner was their actions of denying his grievances. (*Id.*) Having already determined that summary judgment should be granted as to Count II above, the only remaining claims in this case are asserted against Defendants Baca, Walsh and Reynolds. Thus, the issue of personal participation, is limited to Defendants Baca and Walsh.

Liability under § 1983 only attaches upon the personal participation by a defendant in a constitutional violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The denial of a prison grievance alone is insufficient to establish personal participation for purposes of a § 1983 claim. *See West v. Cox*, No. 2:15-cv-00665-GMN-VCF, 2017 WL 3427973, at *3

(D. Nev. Aug. 8, 2017) (holding denial of grievance insufficient to establish personal participation in § 1983 action); *May v. Williams*, No. 2:10-cv-00576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (same).

The court cannot conclude that Defendant Walsh's involvement in this case was limited to simply denying Plaintiff's grievance. Plaintiff submitted two affidavits in support of his opposition that describe additional actions taken by Walsh. In the first affidavit, Plaintiff describes a meeting he attended with Walsh to resolve differences and grievances directly related to the common fare/kosher diet menus raised by various inmates. (ECF No. 144-2 at 4-5, ¶¶ 10-11). Plaintiff further indicates, based on that meeting, Walsh personally drafted a memo related to the subject matter of that meeting. (*Id.* at ¶¶ 15-16). This memo, according to Plaintiff's affidavit, specifically described the fact that there was no "vegetarian" kosher diet menu. (*Id.*) In the second affidavit, Plaintiff again references the actions Walsh took in creating the memo related to the common fare/kosher diet issues. (ECF No. 144-2 at 9, ¶¶ 1-3). Therefore, the court finds that, at a minimum, there is sufficient evidence to create an issue of fact related to Defendant Walsh's personal participation in this case.

By contrast, Plaintiff has failed to submit any admissible evidence to create an issue of fact related to Baca's personal participation. In Count III, the FAC asserts a claim of supervisory liability against Baca based on his alleged failure to properly train and supervise Reynolds. (ECF No. 3 at 5; ECF No. 4 at 1, 7). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under § 1983." *Taylor*, 880 F.2d at 1045; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

With respect to Defendant Baca, Plaintiff has failed to come forward with any admissible evidence to establish Baca personally participated in the alleged constitutional

violations in this case. Defendant Baca is the Warden at NNCC. There has been no evidence establishing that Baca failed to properly supervise or train Reynolds. Finally, there is no evidence that Baca personally set the policy related to Common Fare diet or the Kosher diet menus. As such, the court finds that summary judgment should be granted as to any remaining claims against Baca.

C.    Qualified Immunity

"[G]overnment officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted); *see also Wood v. Moss*, 572 U.S. 744, 757 (2014) ("The doctrine of qualified immunity protects government officials from liability for civil damages ... ."); *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)); *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).   The reasonableness of the officer's conduct is "judged against the backdrop of the law at the time of the conduct." *Kisela*, 138 S. Ct. at 1152 (quotation marks and citation omitted).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled, in part, on other grounds by, *Pearson v. Callahan*, 555 U.S. 223 236 (2009). First, the court must consider whether the facts "[t]aken in the light most favorable to the party asserting the injury ... show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201.  "If there is no constitutional violation, the inquiry ends and the officer is entitled to qualified immunity." *Ioane*, 903 F.3d at 933. Second, the court

must determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201; *Wood v. Moss*, 572 U.S. 744, 757 (2014) ("The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). *Saucier's* framework is not inflexible.  *Pearson*, 555 U.S. at 236 (explaining the sequence, while "often appropriate," "should no longer be regarded as mandatory").  Rather, judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Having already determined there are issues of fact related the constitutional violations alleged in Count I, the court will only address the second element of the *Saucier* test. (ECF No. 137 at 12-13). Defendants argue even if a constitutional violation did occur, the right complained of by Plaintiff was not "clearly established" at the time the events giving rise to this case occurred. (*Id.*) However, Defendants improperly define the "right" in this case as the right of an inmate to be offered "a kosher diet accommodation that is recognized as kosher but not 'vegetarian' under the inmate's personal or philosophical beliefs." (*Id.* at 13). As noted in Section A, Subsection 3 above, an issue of fact exists in this case related to whether Plaintiff's requested religious diet accommodation is based on a sincerely held religious belief as opposed to Plaintiff's personal preference. Therefore, it is improper to define the right at issue in this limited manner.

Rather, the right at issue is specifically related to the constitutional rights extended to inmates under the First Amendment to request and receive (or be denied) a religious diet accommodation. At the time the events took place in this case, there was clearly established law in the Ninth Circuit articulating the constitutional rights of inmates related to their requests for a religious diet accommodation under the First Amendment. *See Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). In fact, the *Shakur* case was decided in

2008, three years prior to the events in this case and is directly on point. In *Shakur*, the Ninth Circuit expressly addressed the contours of the constitutional rights of inmates with respect to a religious diet accommodation when the diet requested is not necessarily a direct requirement of the particular religion, but which the inmate asserts is based on their own sincerely held religious beliefs. *Id*. Therefore, the court finds that Defendants are not entitled to qualified immunity under the facts of this case.

**V.    CONCLUSION**

Based on the foregoing, the court recommends that Defendants' motion for summary judgment (ECF No. 137) be granted, in part, and denied, in part. Specifically, the court recommends Defendants' motion for summary judgment as to Counts II and III be granted, however, be denied as to Count I. The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///
///
///
///
///
///
///
///

1

## VI.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 137) be **GRANTED** as to Count II and III;

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 137) be **DENIED** as to Count I.

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** as to any claims against Defendant Baca.

**DATED:**  May 3, 2019.

_____
UNITED STATES MAGISTRATE JUDGE